UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CROSBY CONSTRUCTION SERVICES, INC.** | **CIVIL DOCKET NO. 6:23-cv-00438** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **RIGID CONSTRUCTORS, LLC, ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

### MEMORANDUM RULING

Before the Court is a MOTION FOR PARTIAL SUMMARY JUDGMENT (the "Motion") filed by Defendants, Rigid Constructors, LLC (hereinafter, "Rigid") and Philadelphia Indemnity Insurance Company (collectively, "Defendants"). [Doc. 25]. Plaintiff, Crosby Construction Services, Inc., (hereinafter, "Plaintiff" or "Crosby"), filed an Opposition on September 24, 2024 [Doc. 34] and Defendants filed a Reply on September 26, 2024 [Doc. 36]. For the following reasons, the Defendants' Motion is GRANTED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 20, 2020, the United States Army Corps of Engineers ("USACE") awarded Contract Number W912HY20C0028 ("Prime Contract") to Rigid as the general contractor for a project referred to as "Unrestricted Procurement for Houston Ship Channel, Texas Lost Lake Placement Area in Harris County, Texas" ("the Project"). [Doc. 34-2, p. 1]. Following execution of the Prime Contract, Rigid entered into a Master Subcontract Agreement ("MSA") with Crosby on December 15, 2020, for the performance of work on the Project. *Id.* at p. 2. *See* [Doc. 9, p. 4]. However,

in February 2021, after the MSA was signed, Crosby alleges that it became "aware of a dramatic increase in steel pricing in the range of +15% on structural materials to +40% on piping materials due to the COVID-19 pandemic lockdown[.]" [Doc. 34-2, p. 2].

Crosby promptly notified Rigid of this problem and "inquired as to whether there was a process to submit a change order for commodities fluctuations to the USACE[.]" *Id.* On February 23, 2021, Rigid "responded by indicating that Crosby may have grounds for requesting a material price adjustment per FAR Clause 52.216-4[.]"[1] [Doc. 25-2, p. 2]. A series of related emails were exchanged between the parties. [Doc. 25-1, pp. 55-75]. The parties then met to discuss the issue on June 22, 2021, and a subsequent email was sent summarizing this meeting. *Id.* On September 21, 2021, Rigid contacted USCAE, requesting the Prime Contract be amended to add a "material escalation clause."[2] [Doc. 25-2, p. 3]. On October 4, 2021, USACE denied this request. *Id.*

---

[1] The federal acquisition regulation system "is established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies. The Federal Acquisition Regulations System consists of the Federal Acquisition Regulation (FAR), which is the primary document, and agency acquisition regulations that implement or supplement the FAR." 48 C.F.R. § 1.101. Subchapter H of Title 48 of the Code of Federal Regulations "(a) gives instructions for using provisions and clauses in solicitations and/or contracts, (b) sets forth the solicitation provisions and *contract clauses prescribed by this regulation*, and (c) presents a matrix listing the FAR provisions and clauses applicable to each principal contract type and/or purpose (e.g., fixed-price supply, cost-reimbursement research and development)." 48 C.F.R. § 52.000. (Emphasis added). The parties refer to these clauses as "FAR clauses."

[2] A material escalation clause, such as FAR Clause 52.216-4, "provides for upward and downward revision of the stated contract price upon the occurrence of specified contingencies." *Lakeshore Eng'g Servs., Inc. v. United States*, 110 Fed. Cl. 230, 241 (2013), aff'd, 748 F.3d 1341 (Fed. Cir. 2014).

On April 4, 2023, Crosby, filed this lawsuit against Defendants, asserting claims under the Miller Act[3] and breach of contract under state law. Plaintiff alleged jurisdiction for its Miller Act Claim pursuant to 40 U.S.C. § 3133(b)(3), and supplemental jurisdiction for its state law claims under 28 U.S.C. § 1367. On June 1, 2023, Defendants filed an answer and counterclaim, asserting that Plaintiff's breach of contract claim was barred by the doctrine of *res judicata,* and that Rigid was damaged because it had to pay increased prices for work to be completed because of Crosby's delays in not paying its vendors and/or employees. [Doc. 6, pp. 7-8].

Defendants filed the instant Motion on August 21, 2024, seeking to have Plaintiff's state law breach of contract claim for "escalation costs" dismissed. [Doc. 25]. Plaintiff was permitted an extension of time to respond, after which it filed its brief in opposition to the Motion and Defendant filed a Reply Memorandum. [Docs. 27, 28, 34, 36]. The Defendants' Motion is now ripe for ruling.[4]

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying […] the part of each claim or defense […] on which summary judgment is sought." Fed. R. Civ. P. 56. A

---

[3] "The Miller Act, 49 Stat. 793, as amended, 80 Stat. 1139, 40 U.S.C. [§] 270a et seq., requires a Government contractor to post a surety bond 'for the protection of all persons supplying labor and material in the prosecution of the work provided for' in the contract. The Act further provides that any person who has so furnished labor or material and who has not been paid in full within 90 days after the last labor was performed or material supplied may bring suit on the payment bond for the unpaid balance. 40 U.S.C. [§] 270b(a)." *F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 118, 94 S. Ct. 2157, 2159–60, 40 L.Ed.2d 703 (1974).

[4] Here, the contract between the parties contains a Louisiana choice of law provision. [Doc. 25-1. p. 28]. Accordingly, the Court will apply Louisiana law to Plaintiff's claims for breach of contract.

court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019) (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## LAW AND DISCUSSION

In their Motion, Defendants argue that Plaintiff's breach of contract claim for the recovery of escalation costs fails because Rigid never agreed to pay material escalation costs. [Doc. 25-3, p. 6]. Rather, Defendants assert that both "the Prime Contract and [MSA] were *fixed price contracts* that did not provide for the payment of material escalation charges." *Id.* Because the Prime Contract was never amended to include a material escalation clause because of USACE's refusal, Defendants contend that they owed no obligation to compensate Crosby for escalation costs. *Id.* at p. 7.

In opposition, Plaintiff first contends that the MSA was not "in the form of a true fixed-price contract" because it could be "altered by change orders submitted by Crosby Construction," pointing to the Louisiana Court of Appeals opinion of *Semco, LLC v. The Grand LTD,* 16-342 (La. App. 5 Cir. 5/31/17), 221 So. 3d 1004, *writ denied*, 2017-01291 (La. 11/6/17), 229 So. 3d 475. [Doc. 34, pp. 23-25]. Plaintiff also claims that Rigid breached the MSA by failing to approve the requested written change

orders submitted by Plaintiff, citing *Transier v. Barnes Bldg., LLC,* 2014-1256 (La. App. 3 Cir. 6/10/15), 166 So. 3d 1249. [Doc. 34, p. 15]. Alternatively, Plaintiff claims that the MSA should be reformed to include a material escalation clause, or that the Court should find that an oral modification of the MSA occurred, because "the actions of both Rigid and [Plaintiff] are fully supportive of the intent of both parties to include escalated costs as part of the MSA." *Id.* at p. 18. In the alternative, Plaintiff asserts that "it is owed recovery for its escalation costs under various equitable remedies," such as quantum meruit, detrimental reliance, and unjust enrichment. *Id.* at pp. 19-20.

In their Reply, Defendants argue that the MSA allowing for change orders does not "alter the fixed-price nature of the contract." [Doc. 36, p. 2]. Defendants distinguish *Transier*, 166 So. 3d 1249, stating that it "involved price allowance[s] and the owner made changes during construction." *Id.* Similarly, Defendants distinguish *Semco, LLC*, 221 So. 3d 1004, based on factual differences in contractual language. Lastly, Defendants attest that Plaintiff's Complaint does not assert claims for the other theories it advances, and even if it did, "none of these theories support denying [Defendants' Motion]." *Id.* at p. 4.

"To determine issues of state law, we look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir. 2010). In Louisiana, the elements of a breach of contract claim are: "(1) defendants owed [plaintiffs] an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiffs." *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 2014-

2592 (La. 12/8/15), 193 So. 3d 1110, 1115 (citing *Favrot v. Favrot*, 2010-0986 (La. App. 4th Cir. 2/9/11), 68 So. 3d 1099, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127). As discussed below, the Court finds that there is no genuine dispute of material fact with respect to the first element of Crosby's breach of contract claim, i.e., that Rigid owed Crosby escalation costs under the MSA. The MSA is an unambiguous fixed-price contract.

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2025. *See also Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055, p. 5 (La. 3/19/13), 112 So. 3d 187, 192. "The language of the [contract] is the starting point for determining comment intent." *Gulf Eng'g Co., LLC. v. Dow Chem. Co.*, 334 F.Supp.3d 804, 807 (M.D. La. 2018) (citing *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015)).

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. A contract is only ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction. *Grayson L.L.C. (of Louisiana) v. BPX Operating Co.,* 629 F.Supp.3d 468, 475 (W.D. La. 2022) (quoting *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998) (applying Louisiana law)). "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Bonilla v. Verges Rome Architects*, 2023-00928 (La. 3/22/24), 382 So. 3d 62, 65 (citing

*Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 9 (La. 5/22/07), 956 So. 2d 583, 590).

As set forth herein, Defendants assert that both the Prime Contract and MSA were fixed-price contracts, pointing to language in the contracts themselves. [Doc. 25-3, p. 6]. In opposition, Plaintiffs argue that the MSA is not a fixed-price contract because it could be "altered by change orders submitted by Crosby Construction." [Doc. 34, pp. 6].

The Court begins by turning to the language of the MSA because its language "is the starting point for determining comment intent." *Gulf Eng'g Co., LLC. v. Dow Chem. Co.*, 334 F.Supp.3d 804, 807 (M.D. La. 2018). To start, in Article 3 (Contract Sum), Section 1, the MSA states that "Contractor shall pay the Subcontractor in current funds for the performance of the Subcontractor's Work, subject to additions and deductions by Change Orders, back-charges or other modifications as provided in the Contract Documents, the amount set forth in the Purchase Order. *No additional amounts shall be due Subcontractor*." [Doc. 25-1, p. 24]. (Emphasis added). Further, in Article 11 (Changes in the Subcontractor's Work), the MSA provides that the contractor *may* order changes through written change orders, *no compensation* is due for work without a written change order authorizing such work, and that all modifications of the contract must be in writing.[5] *Id.* at pp. 24, 30. (Emphasis added).

---

[5] "11.1: Contractor, without invalidating the Agreement, may order Changes in the Subcontractor's Work [....] the Contract Sum and the Contract Time may be changed only by written Change Order. Subcontractor hereby stipulates that it shall not rely upon any oral communication changing the terms, conditions, timing or scope of the Subcontractor's Work

Moreover, Article 1, Section 1, of the MSA showcases the clear intent of the parties to incorporate additional documents into the contract, including the Prime Contract.[6] The Prime Contract, in turn, incorporates "FAR 52.232-5 (Payments under Fixed-Price Construction Contracts), which provides that the 'Government shall pay the Contractor the contract price as provided in this contract.'" [Doc. 25-2, p.1]. The Prime Contract also includes an itemized bid, with a total project cost being listed as $6,483,000. [Doc. 25-1, p. 7]. And Section 01 22 00.10 provides: "Payment items for the work of this Contract for which lump sum payments will be made are listed in the BID SCHEDULE and described below […] The lump sum price and payment made for each item listed constitutes full compensation for […] materials [.]" *Id.* at p. 20.

Applying the relevant Louisiana Civil Code articles to the facts of this case, the Court interprets the MSA as "clear and unambiguous." Put simply, the MSA is only

---

[….] 11.3: Should the Subcontractor commence any additional Work without first obtaining a written Change Order signed by Contractor, no compensation of any kind will be due Subcontractor for such work. […] All modifications to the Contract Documents must be in writing." Id.

[6] "It is a well-established rule of contract law that 'separate documents may be incorporated into a contract by attachment or reference thereto.'" *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1075 (5th Cir. 2020) (citing *Russellville Steel Co. v. A & R Excavating, Inc.*, 624 So. 2d 11, 13 (La. Ct. App. 1993)). "'Where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.'" *Id.* (citing *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011)). Here, Article 1, Section 1, of the MSA states: "Subcontractor shall perform all of the Subcontractor's Work in strict conformance with and as required by the 'Contract Documents', as identified herein below: […] The Prime Contract between Owner and General Contractor[.]" [Doc. 25-1, p. 23]. Thus, it is clear that the parties' intended to incorporate the Prime Contract into the MSA.

susceptible to one reasonable interpretation.[7]  *See Grayson L.L.C. (of Louisiana)*, 629 F.Supp.3d at 475.  The contractual language both in the MSA and Prime Contract are clear that no additional payments are due unless written change orders occur.  And the MSA plainly states that change orders are optional, that they must be approved in writing, and that no changes to payment owed can occur without a written change order.  [Doc. 34-4].  The use of such clear language is dispositive evidence of the parties' intentions.  *See* La. Civ. Code art. 2046.  *See also Grayson L.L.C. (of Louisiana)*, 629 F.Supp.3d at 475.

Plaintiff counters that the holding of *Semco, LLC, supra,* 221 So. 3d 1004, governs this case.  *Semco* involved a contract for the construction of a liftboat.  *Id.* at 1009.  But, unlike here, that contract included "a unique and somewhat ambiguous provision[.]"  *Id.* at 1033.  It provided that if Semco could not construct a liftboat weighing 200 tons "through normal methods, the parties would negotiate a solution, which may result in increased construction costs."  *Id.* at 1010.  The *Semco* court found that "there was a great deal of testimony and evidence to be weighed and

---

[7]  Plaintiff's only argument against the MSA being a fixed-price contract — that the MSA is not a fixed-price contract because it allowed for change orders — is entirely without merit and discredited by Louisiana jurisprudence.  *See First Bank & Tr. v. Treme,* 18-477 (La. App. 5th Cir. 12/19/18), 262 So. 3d 1050, 1054, *writ denied*, 2019-0099 (La. 3/18/19), 267 So. 3d 91 ("A fixed-price construction contract was signed for each project, meaning that *Treme* could not get paid any more than the stated contract price *unless the property owner approved a change order for an additional payment.*") (Emphasis added); *See also MKR Servs., L.L.C. v. Dean Hart Const., L.L.C.,* 44,456 (La. App. 2d Cir. 7/8/09), 16 So. 3d 562, 565 ("DHC attempts to argue that the contract was not in fact a lump sum contract.  This argument is completely without merit.  The contract refers to the 'Lump Sum' price no less than seven times, and *it only allows for alterations after a written change order has been approved and signed by both partie*s.  This inflexibility is the essence of a typical lump sum construction contract.") (Emphasis added).

considered in determining the parties' intent surrounding" that clause. *Id*. at 1033. Here, unlike in *Semco*, the MSA does not include any analogous provisions in which construction costs are left undetermined or flexible. Moreover, the language of the MSA is objectively clear, dispensing of any need to consider parol evidence outside the four corners of the contract.

The Court therefore finds that on its face the MSA is an unambiguous fixed-price contract. Further, it is undisputed that no written change order was ever executed relating to the cost of steel as required by the contract.[8] As such, Plaintiff's breach of contract claim for escalation costs fails as a matter of law under the plain terms of the contract.

Next, Plaintiff urges the Court that there are issues of fact regarding oral modification and reformation of the contract. Both claims require a showing of mutual consent.[9] The burden is on the party claiming either an oral modification or reformation.[10]

---

[8] The record does not contain any written change orders.

[9] *Cajun Constructors, Inc. v. Fleming Const. Co.*, 2005-2003 (La. App. 1st Cir. 11/15/06), 951 So. 2d 208, 214, *writ denied* sub nom. *Cajun Constructors, Inc. v. Fleming Const. Co.*, 2007-0420 (La. 4/5/07), 954 So. 2d 146. *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 92-1544 (La. App. 1st Cir. 03/11/94), 634 So. 2d 466, 478-79 (citing *Placid Refining Company v. Privette*, 523 So. 2d 865, 868 (La. App. 1st Cir.), *writ denied*, 524 So. 2d 748 (La. 1988)). *First State Bank Trust Company of East Baton Rouge Parish v. Seven Gables, Inc.*, 501 So. 2d 280, 285 (La. App. 1st Cir. 1986), *writ denied*, 502 So. 2d 103 (La. 1987)).

[10] "The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence." *DeMoss v. Pine Hills Golf & Country Club, Inc.*, 42,033 (La. App. 2d Cir. 4/4/07), 954 So. 2d 316, 317. The party claiming an oral modification must "prove by a preponderance of the evidence the facts or acts giving rise to the modification." *Id.* (citing La. Civ. Code art. 1831).

Following an independent review of the record, the Court finds insufficient summary judgment evidence to establish a genuine dispute of material fact regarding either: (i) a modification of the contract to include a material escalation clause; or (ii) the necessity of reformation of the contract due to mutual error.  This is true for one simple reason—the email correspondence submitted between the parties showcases that at no time did the Defendants believe that the MSA or the Prime Contract included a material escalation clause.[11]

Put simply, because Plaintiff's theories of oral modification and reformation both require *mutual* intent, these claims fail.  At no time was there an agreement – either at the inception of the project or any time thereafter – that the MSA included a material escalation clause.[12]  Rigid never stated or inferred that Crosby was entitled to material escalation costs or that the MSA or the Prime Contract allowed for such

---

[11]    This is demonstrated through the following email correspondence sent by various representatives of Rigid: "Greg per FAR Clause 52.216-4 and speaking with the Corps it appears we have *grounds* for *requesting* a material price adjustment[.]" [Doc. 25-1, p. 56] (Emphasis added); "[USACE does] not have any allowances for increase in material pricing that I am aware.  I will look further into the matter, but for now I assume there is no fluctuation we can realize[.]"  *Id.* at p. 59; and "Put together some information regarding COVID and its relation to steel escalation as well as the dramatic escalation itself…we need something to back why we are asking for an *amendment*.  *Id.* at p. 65. (Emphasis added).

[12]    The Court notes that a singular email correspondence could suggest otherwise.  In the email in which Plaintiff summarized its meeting on the issue with Rigid, Plaintiff stated, "We discussed that the USACE is obligated to pay the escalation of materials and possibly additional escalations as per 48 CFR § 52.216-4." [Doc. 25-1, at 63].  In their statement of uncontested material facts, Defendants acknowledged that this meeting occurred and that this email summarizing the meeting was sent. [Doc. 25-2, p. 2].  However, this does not preclude summary judgment on the issue of reformation and oral modification of the contract.  As explained by the United States Supreme Court, an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  Here, this email is uncorroborated, self-serving, and the only of its kind.  The Court therefore finds that a reasonable jury could not return a verdict in favor of Plaintiff relying on such evidence.

costs. To the contrary, Defendants always maintained that only USACE had authority to approve this request. Indeed, several times in this correspondence, Plaintiff *itself* acknowledged as much.[13]

Because: (i) the parties did not include a material escalation clause in the MSA or through any of the "Contract Documents" incorporated by their agreement; and (ii) there is no evidence of an oral modification or mutual error between the parties, Plaintiff's breach of contract claim for escalation costs fails as a matter of law. Accordingly, the Court grants Defendants' motion for summary judgment on this issue.[14]

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. 25] is GRANTED.

---

[13] For instance, Plaintiff emailed "Rather than refusing […] because the clause was not in the contract, you would think they would have requested or initiated the amendment to add the FAR." [Doc. 25-1, p. 65]. Similarly, in another email, Plaintiff stated, "This amendment should request the USACE to add FAR 52.216-4 to the contract [….] A contract can be amended during the contract if both parties agree." *Id.* at p. 66. Moreover, Plaintiff stated "[…] we are at a loss why the FAR was not included in the original USACE contract with Rigid." *Id.* at p. 73.

[14] The Court will not consider Plaintiff's claim that Defendants breached the contract by failing to approve change orders, [Doc. 34, p. 14], because Plaintiff did not plead this claim in its Complaint. *See Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238 (5th Cir. 2014). In its Complaint, Plaintiff alleged a breach of contract claim solely on the basis that Rigid failed to pay for the labor materials, and services it provided. [Doc. 1, p. 5]. Further, even if Plaintiff had raised this claim, it fails because *Transier, supra*, 166 So. 3d 1249, is factually distinguishable. In *Transier*, the contract stated " 'any changes from [the] plan or bid/proposal will be addressed with cost estimate and signed change orders[.]'" *Id.* at 1261. Further, as referenced by Defendants, the contract in *Transier* involved change orders for work, not the cost of goods. [Doc. 36, p. 2].

IT IS FURTHER ORDERED that Plaintiff's breach of contract claims against Defendants for the recovery of material escalation costs are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 29th day of October 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE